IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANIEL J. MICK,

                              Petitioner,                        OPINION and ORDER

        v.
                                                                   23-cv-24-jdp
LIZZIE TEGELS,

                              Respondent.

---

Petitioner Daniel J. Mick, appearing by counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Mick challenges his state court convictions for one count of first-degree sexual assault of a child and two counts of causing a child to view a sexually explicit conduct. Mick contends that the trial court's exclusion of his proposed expert testimony violated his right to present a defense and that both his trial and his original postconviction/appellate counsel were ineffective. In particular, he contends that trial counsel was ineffective by failing to object to testimony by a forensic examiner about the credibility of the alleged victim, his 6-year-old stepdaughter "Joan," and by failing to properly impeach Joan's mother, "Cindy."[1] He contends that his postconviction/appellate counsel failed to investigate his claims and erroneously advised Mick that he could file either a postconviction motion or an appeal, but not both.

The trial was largely a credibility contest between Mick and Joan, who presented a compelling, credible account of the abuse through a recorded interview by a forensic examiner.

---

[1] I will use the same pseudonyms for these parties as the Wisconsin Court of Appeals did in its most recent decision denying Mick postconviction relief. *State v. Mick*, 2022 WI App 55, 2022 WL 2176271.

I conclude that Mick fails to show that the Wisconsin Court of Appeals unreasonably applied clearly established federal law or made unreasonable determinations of the facts in concluding that it was appropriate for the trial court to exclude Mick's proposed expert testimony. I also conclude that some of Mick's ineffective-assistance-of-counsel claims are procedurally barred. And for various reasons, including the strength of Joan's recorded interview, I conclude that Mick does not show that he is entitled to habeas relief on his remaining ineffective-assistance claims. Accordingly, I will deny his petition.

BACKGROUND

The following facts are taken from the petition and the state court records provided by Mick and the state.

Mick was charged with two counts of first-degree sexual assault of a child and two counts of causing a child under 13 to view sexually explicit conduct. The alleged victim was Joan, Mick's 6-year-old stepdaughter. Joan's mother, Cindy, was married to Mick, but by 2015 they were on the verge of a divorce and a custody battle over their son. Cindy first reported the allegations that Mick had sexually abused Joan on November 19, 2015, the same day that Cindy learned that Mick was seeking a harassment injunction against her and had filed for divorce. Soon after Cindy reported the allegations of sexual assault, Detective Cheryl Patty of the Dane County Sherriff's Office conducted a videorecorded forensic interview with Joan.

Joan discussed two incidents in her recorded statement, both occurring in August 2015. The first incident occurred at the family's home. Joan stated that Mick showed Joan a video on his phone about "how to make babies" and describing oral sex. Dkt. 15-1, at 11. Joan stated that Mick showed Joan his "private part," "shaked [his penis] with his hand," and described

"stuff" that was "white" "coming out of his private part." *Id.* at 12–13. Joan added, "He didn't do anything to me." *Id.* at 14.

The second incident occurred in the family's van. Mick took Joan out for ice cream for a "daddy girls day." *Id.* at 15. Joan said that as it got dark, Mick drove to a park but wasn't driving safely because "he was looking at the bad stuff on the phone." *Id.* at 16. Mick asked Joan if she "want[ed] to put [her] mouth on his private part." *Id.* at 17. Mick convinced Joan to do that. Joan stated that then "[t]here was stuff coming out of it, in my mouth and then he let me have a drink of water." *Id.* at 18. She discussed the color, taste, and temperature of Mick's semen.

Mick pleaded not guilty to all charges. Mick's trial counsel retained David Thompson, Ph.D., a clinical and forensic psychologist, to review the forensic interview of Joan and records from the criminal case. Thompson provided a report and a supplement "describ[ing] a variety of factors present in this case that extensive research has shown affects the reliability of a child's statements." Thompson listed six factors that may "have either strengthened or weakened the reliability of the statements made by the victim." Dkt. 15-2, at 5.

The state moved to exclude Dr. Thompson's testimony, arguing that it would not assist the jury in understating the evidence or finding facts, and that it would cause confusion of the issues or mislead the jury. After a hearing on pretrial motions, the trial court excluded Thompson's testimony, stating that the information in Thompson's report wouldn't help the jury understand the issues and that defense counsel could do as effective a job of critiquing the reliability of Joan's interview using common-sense concepts. Mick moved to reconsider, but the trial court denied that motion.

The trial took place in March 2017. Mick's trial counsel's opening statement focused on the allegations of abuse coming from Cindy and that law enforcement didn't challenge or question the allegations.

The state called several witnesses, including Detective Patty and Cindy. At trial, the state presented testimony from Patty on her training in conducting forensic interviews, the importance of protocols in conducting such interviews, and how such interviews reduce a child's suggestibility.

During a break in Patty's testimony, Joan's video-recorded interview was played to the jury. After that, Patty continued to testify. On cross-examination, Mick's trial counsel elicited from Patty testimony that the interviewer's role wasn't to challenge or question the answers given by the child, that Patty did not follow up on answers that Joan gave about Cindy telling her things to ascertain exactly what Cindy told her, and that Patty didn't ask specific questions about what Cindy or Joan's grandparents told Joan or what Joan overheard from other conversations.

Mick's counsel then asked Patty about the concepts of credibility and reliability, with Patty eventually saying that, "[t]o me, [Joan's] testimony or her interview, the information she provided, I view that as credible," and "[t]o me, credible and reliable are nearly interchangeable, in my opinion." Dkt. 6-2, at 357, 358.[2] Mick's trial counsel did not object to those answers or move to strike them.

---

[2] The trial transcript is broken into separate docket entries for each day of trial but is consecutively paginated. *See* Dkt. 6. I cite to the consecutive page numbering rather than the numbering for each separate day of trial.

After Patty's testimony, the defense was allowed to call Joan as a follow up to her recorded interview. In her live testimony, Joan did not recall any of the events with Mick other than that she got ice cream with him, nor could she remember the video interview.

The state also called Cindy. On direct examination, Cindy stated that on November 19, 2015, she spoke with a police officer about Mick seeking a restraining order against her; she discussed Mick having what she described as a pornography addiction. Cindy stated that after the phone call, Joan said that she overheard the conversation and said that she knew what "porn videos" were, and she then told Cindy about Mick having her watch pornography and about him sexually assaulting her. Cindy then called back the police.

On cross-examination, Mick's counsel attempted to impeach Cindy's credibility and suggest that her motive was to encourage Joan to make false allegations. He questioned her about her assertion that Joan first reported Mick's abuse after Cindy's first phone call with police; other testimony showed that Cindy reported at least some of this misconduct in the first phone call. Counsel pressed Cindy on a heated text exchange between Mick and Cindy the day before. Cindy acknowledged that they were headed toward divorce and fighting over child custody, that she used Mick's password to break into his email and other online accounts, and that she told him she found things in his email that she would use against him in court. She admitted that she texted something along the lines of, "Have fun trying to win this [child custody] case." *Id.* at 470. Cindy admitted that a restraining order was ultimately issued against her at least in part based on Cindy's texts. Counsel also referred to a text message attached to the restraining order in which Cindy told Mick, "You haven't seen me yet, Bitch. You want to play dirty, I'll get FILTHY on you." *Id.* at 466. Cindy testified that she did not remember making that statement, but also did not deny that she had.

5

Mick testified that there was an instance in which Cindy caught him viewing pornography on his phone while Joan was in the same room watching television (an incident that was not the basis for the criminal charges). He denied ever inviting Joan to watch pornography or having any kind of sexual contact with Joan.

There were no third-party witnesses to the incidents, no physical evidence was recovered from Mick's vehicle, and no evidence was recovered from Mick's telephone.

In its closing argument, the state discussed reasons for believing Joan's video testimony and argued the implausibility of Cindy fabricating a story of abuse and coaching Joan to repeat it. The state noted that Mick initially denied to police that there was a "daddy-daughter date" (the basis for the second charged incident) and then gave a timeline of that evening with Joan that the state argued was inconsistent with other testimony.

For his closing argument, Mick's trial counsel focused on the suspicious timing of Cindy reporting sexual abuse allegations immediately after she was called by police about harassing Mick, and on law enforcement gathering information to build a case against Mick rather than investigating whether the allegations were true. In particular, in discussing Detective Patty's interview of Joan, counsel stated law enforcement's attitude as, "You are not to question any of the stories. They just write them down and pass them on." Dkt. 6-3, at 665. Counsel also suggested that Joan's story was coached by Cindy.

The jury found Mick guilty of one count of first-degree sexual assault of a child under 13 and two counts of intentionally causing a child under 13 to listen to and view sexually explicit conduct. The one acquittal was on the count of first-degree sexual assault for the first incident—the incident regarding which Joan testified, "He didn't do anything to me."

Through postconviction/appellate counsel, Mick directly appealed his judgment of conviction without first filing a postconviction motion. Mick argued that the trial court erred by granting the state's motion in limine to exclude proposed expert Thompson from testifying at trial and that the exclusion of that testimony violated his constitutional right to present a defense. The Wisconsin Court of Appeals affirmed the decision of the trial court, concluding that Thompson's testimony was appropriately excluded because "the probative value of the testimony of Mick's expert is outweighed by its prejudicial effect." S*tate v. Mick* (*Mick I*), 2018 WI App 45, ¶ 34, 2018 WL 3004636. The Wisconsin Supreme Court denied Mick's petition for review.

In September 2019, Mick filed a pro se motion for postconviction relief under Wis. Stat. § 974.06. Among other things, Mick argued that trial counsel was ineffective by failing to properly impeach Cindy, including with a text message from Cindy to Mick stating that Joan was "admitting lots of stuff" to a counselor, Dkt. 15-11, at 9, and by failing to object to Detective Patty describing Joan's testimony as credible. The state moved to summarily dismiss the motion because Mick hadn't raised his ineffective assistance of counsel claims in a postconviction motion before his direct appeal and because the motion didn't allege sufficient facts to entitle him to relief. In April 2020, the trial court granted the state's motion to dismiss Mick's § 974.06 motion without holding a *Machner* hearing to obtain testimony from Mick's trial counsel, stating that Mick failed to raise his ineffective assistance claims at the proper time, before his direct appeal.[3] The court stated that Mick discussed this claim with postconviction/appellate counsel but that counsel didn't consider it wise to raise too many

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

issues on appeal, and that counsel believed that an ineffective-assistance-of-counsel argument would likely be rejected. The court went on to consider the substance of Mick's claims regarding the failure to attack Cindy's credibility or object to Detective Patty opining on Joan's credibility. The court concluded that counsel wasn't deficient because he had "vigorously" attacked Cindy's credibility in multiple ways at trial, Dkt. 15-9, at 3, and because trial counsel's questioning of Patty was a strategic decision to emphasize Patty's failure to explore Joan's potential suggestiveness by asking Joan about what Cindy told her.

In July 2020, through newly retained postconviction counsel (who are also representing Mick in this habeas action), Mick filed what he called a "supplemental" § 974.06 motion raining new claims for relief and seeking reconsideration of the trial court's previous decision.[4] The state again moved for summary dismissal. After briefing the motions and hearing argument, the trial court denied Mick's supplemental motion without a *Machner* hearing, stating that Mick didn't have a sufficient reason to bring new claims for postconviction relief, and that in any event none of his claims were meritorious.

Mick appealed the trial court's rulings on his § 974.06 motions. In June 2022, the state court of appeals affirmed the trial court, rejecting on the merits Mick's ineffective-assistance claims from his original pro se § 974.06 motion, and concluding that the new postconviction arguments that Mick raised in his supplemental motion were procedurally barred. *State v. Mick*

---

[4] Throughout the proceedings, the parties have disputed whether this motion was a supplement to Mick's pro se § 974.06 motion or a second § 974.06 motion altogether. The state court of appeals stated that "[t]he State's point about nomenclature is well taken" but nonetheless referred to Mick's motion as "supplemental" because that's how it was titled. *State v. Mick*, 2022 WI App 55, ¶ 6 n.5, 2022 WL 2176271. I will do the same.

(*Mick II*), 2022 WI App 55, 2022 WL 2176271. The state supreme court denied Mick's petition for review.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

Federal courts may grant habeas relief only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)–(2). A state court's adjudication is "contrary to" clearly established Supreme Court precedent if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under § 2254(d)(1)'s "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. For the application to be unreasonable, a state prisoner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam). Similarly, for a state court's factual finding to be unreasonable, there must be no possibility of reasonable agreement with the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015); *Wood v. Allen*, 558 U.S. 290, 301–02 (2010). When applying § 2254(d), courts look to "the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *See Dassey v. Dittmann*, 877 F.3d 297, 302

(7th Cir. 2017) (en banc); *see also Wilson v. Sellers,* 584 U.S. 122, 125 (2018). In this case, that means that I must review the 2018 and 2022 decisions by the Wisconsin Court of Appeals.

Mick brings the following claims for relief:

- The trial court violated his right to present evidence by excluding proposed expert testimony by Dr. David Thompson.

- Trial counsel was ineffective by failing to object to statements from forensic interviewer Patty vouching for Joan's credibility.

- Trial counsel was ineffective by failing to impeach Cindy with additional text messages from Cindy and investigate evidence supporting that impeachment.

- His original postconviction/appellate counsel was ineffective by failing to raise his ineffective assistance of trial counsel claims, failing to review the audio recording of Cindy admitting that Joan hadn't received counseling, and by advising him that he couldn't pursue both a postconviction motion and an appeal.

## A. Exclusion of Dr. Thompson's testimony

Mick contends that the trial court violated his right to present evidence by excluding proposed expert testimony by Dr. David Thompson. Thompson's proposed expert report discussed six factors that can strengthen or weaken the reliability of a child's statements in a forensic interview:

- "Repeated interviewing," which either "can result in additional accurate information" or can result in inaccurate information if the interviewer is biased or uses "inappropriate interviewing techniques." Dkt. 15-2, at 6. Thompson considered Joan's discussions with Cindy to be interviews, along with the formal video interview by Detective Patty. Thompson stated that "the multiple interviews of [Joan] by her mother raise significant concerns about the reliability of [Joan]'s statements. It will be important for the jury in this matter to be aware of the potential impact of these multiple interviews on [Joan]'s recollection and statements." *Id.* at 7.

- "External influences," such as "simply over-hearing other people talk in a negative manner about an individual can lead to the child making reports consistent with the negative characteristics attributed to the person in question." *Id.* Thompson noted that Cindy held suspicions about Mick's behavior as early as July 2015 and may have discussed them with Joan's grandparents, but

acknowledged that "no information is available concerning the specifics of those interactions including the extent to which [Joan]'s mother used leading or suggestive questions with her daughter or the extent to which the overheard conversations between [Joan]'s mother and grandparents included negative comments concerning Mr. Mick." *Id.* Thompson stated that "[i]t will be important for the jury in this matter to understand the ease with which children of [Joan]'s age can be influenced by negative stereotypes, overheard conversations, and comments made by parents."

- "Inappropriate interviewing techniques" such as leading or yes/no questions, and "social reinforcement . . . or disapproval for specific statements" can result in inaccurate reports. *Id.* Thompson stated that Patty's showing her badge to Joan at the outset was the type of "display of . . . authority" that can "negatively impact the reliability of children's reports." *Id.* at 8. But he otherwise stated that Patty "generally followed acceptable child interview guidelines" and "did a reasonable job of avoiding leading, suggestive, or other inappropriate questions." *Id.*

- "Interviewer bias" or "confirmatory bias . . . . occurs when an interviewer approaches an interview with a preconceived notion of what may have occurred." *Id.* Thompson believed that this bias may have been revealed by instances when Joan gave answers to questions suggesting an "alternative hypothesis" that she was influenced by discussions with her mother but Patty didn't follow up to probe that possibility. *Id.* However, Thompson noted that Party did follow up appropriately when Joan said "'My daddy [ejaculated] too'" and Patty asked "'How do you know.'" *Id.*

- "Therapy effects" regarding psychotherapeutic techniques that "help[] the child review and process the traumatic events and to cope effectively with communication problems." *Id.* at 9. Thompson stated that he "was not privy to any specific psychotherapy records" but noted that Cindy had texted Mick to say that Joan was in counseling. *Id.* (Other evidence—perhaps unavailable to Thompson—shows that Cindy's statement about Joan being in counseling appears to have been a lie.)

- "Source misattribution errors" occur when an interviewee "identifies the incorrect source of a memory." *Id.* These errors can be fueled by many influences, including overhearing rumors, being asked leading questions or being subjected to other inappropriate interview techniques, or mistakes of memory. Thompson stated that Joan could have faulty memories from discussions with Cindy or overhearing other negative comments about Mick.

The trial court excluded Thompson's testimony, stating that the information in the report didn't show that Thompson's "technical knowledge will assist the trier of fact," and that

11

instead the report presented "very common sense sort of things . . . that the attorney in the matter can cross examine the witness on, and . . . the jury doesn't need the assistance of the professor to understand the testimony." Dkt. 15-4, at 16. The court also stated that "[t]he professor himself indicates that the overall questioning was the interviewer did a reasonable job of avoiding leading, suggestive, or otherwise inappropriate questions," and thus [a] "critique by the professor would simply confuse the issues about whether some questions are better than others, but it does not help the trier of fact in determining whether to believe the memory or credibility of the witness other than what just as effectively can be done by cross." *Id.* at 16–17.

The state court of appeals affirmed the decision of the trial court, applying the test for defense expert testimony set forth in *State v. St. George*, 2002 WI 50, ¶ 54, 252 Wis. 2d 499, 643 N.W.2d 777, and concluding that Thompson's testimony was appropriately excluded because "the probative value of Thompson's testimony was substantially outweighed by the dangers of confusion of the issues and misleading the jury. It necessarily follows that the probative value of the testimony of Mick's expert is outweighed by its prejudicial effect." *Mick I*, 2018 WL 3004636, ¶ 34. In doing so, the court compared this case to another case in which Thompson's expert testimony was excluded, *State v. Schmidt*, 2016 WI App 45, 370 Wis. 2d 139, 884 N.W.2d 510. The court stated:

> The proffered testimony by Thompson here is remarkably similar to that which we held was properly excluded in *Schmidt*, 370 Wis. 2d 139, ¶86. In *Schmidt*, Schmidt sought to offer testimony by Thompson regarding the reliability of statements by a child witness. Thompson submitted a report that detailed many of the same factors described above which the jury should consider when evaluating the accuracy of the child witness's statements. However, "Thompson acknowledged he could not offer an opinion that [the child witness's] testimony or memory was in fact tainted by any of the suggestive interview techniques generally expounded upon in his report." Although we affirmed the exclusion of Thompson's testimony on relevancy grounds, we

> concluded that "[e]ven if Dr. Thompson's testimony had a razor-thin degree of relevancy," "the evidence would have been properly excluded under WIS. STAT. § 904.03" because "[w]hat minimal probative value Thompson's testimony may have had regarding [the child's] credibility was easily outweighed by the very real potential that Thompson's testimony would mislead or confuse the jury."
>
> As in *Schmidt*, so here Thompson offered only broad speculative statements about how, "it will be important for the jury to understand" that each of the factors he described, in theory, "could," "may," or have "the potential" to affect [Joan]'s statements. As in *Schmidt*, so here Thompson offered no testimony that [Joan]'s forensic interview was *in fact* conducted improperly, that [Joan]'s interview statements were *in fact* the product of the phenomena Thompson discussed in his report, or that any suggestive interview techniques had *in fact* occurred.

*Id.*, ¶ 31 (all alterations except the first are from *Mick I*) (citations omitted). The court also emphasized Thompson's finding that "'[o]verall, the interviewer did a reasonable job of avoiding leading, suggestive, or other inappropriate questions.'" *Id.*, ¶ 32 (quoting Dkt. 15-2, at 8) (alteration in the state court of appeals' opinion). It concluded that, as it stated in *Schmidt*, "if Thompson's testimony were admitted into evidence, it is entirely probable the jury would conclude, based solely on the fact he was testifying, that suggestive interview techniques had been used with [the child] despite the absence of any evidence to that effect." *Id.* (alteration in original) (internal quotation omitted).

In his habeas petition, Mick renews his contention that the trial court denied him of his right to present a defense by excluding Thompson's proposed expert testimony. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation omitted).

### 1. Whether the court of appeals' decision rested on state law

The state raises a preliminary argument that I should reject this ground for relief because the state court of appeals' decision regarding the exclusion of Thompson's testimony relied on state-law grounds rather than constitutional grounds. The state argues that "by agreeing that *St. George* controlled the issue in state court, [Mick] was essentially agreeing that the issue was one of state law, or at least forfeiting any argument directly under *Chambers v. Mississippi*, 410 U.S. 284 (1973) or other federal cases." Dkt. 10, at 12.

I will reject this argument. The state court of appeals recognized the federal constitutional dimensions to Mick's claim, stating, "We have recognized that the confrontation and compulsory process clauses of the Sixth Amendment of the U.S. Constitution and Article I, Section 7 of the Wisconsin Constitution grant defendants a constitutional right to present evidence." *Mick I*, 2018 WL 3004636, ¶ 33 (internal quotations omitted). The Wisconsin Supreme Court's *St. George*'s analysis was explicitly created to apply the standards articulated in the relevant United States Supreme Court cases. *See State v. St. George*, 2002 WI 50, ¶ 52 (citing *Chambers* and other Supreme Court decisions). The Wisconsin Court of Appeals' application of *St. George* shows that it meant to apply constitutional standards even if it didn't directly cite Supreme Court case law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (Section 2254(d) "does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." (emphasis in original)).

### 2. Merits

I turn to the merits of Mick's right-to-present-a-defense claim. Although the exclusion of evidence can violate a defendant's right to present a defense, the defendant's right is not

14

absolute. *Taylor v. Illinois*, 484 U.S. 400, 410–11 (1988). "[T]he exclusion of even relevant evidence does not automatically create a due process violation," because "states retain the right, also not absolute, to establish procedures for running their criminal trials." *Morgan v. Krenke*, 232 F.3d 562, 569 (7th Cir. 2000). A state's evidentiary rules do not violate an accused's right to present a defense unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324–25 (internal quotations omitted). Even when there is an error of state law, it is not this court's role to correct it unless the error rises to the level of a constitutional violation. *Morgan*, 232 F.3d at 567. Rather, the only questions on habeas review in this court are whether the Wisconsin Court of Appeals unreasonably concluded that the exclusion of Thompson's testimony did not violate Mick's constitutional right to present a defense, or whether the court of appeals based its ruling on an unreasonable determination of the facts.

Mick contends that the state court of appeals made multiple related errors of fact and of law in assessing this claim: (1) the court unreasonably compared this case to its previous decision in *Schmidt* because the two cases are too dissimilar to make valid comparisons: unlike here, in *Schmidt* Thompson did not have access to a recording or transcript of the child's interview; (2) the court's focus on Thompson's statement that Detective Patty "did a reasonable job of avoiding leading, suggestive, or other inappropriate questions" improperly suggests that Thompson didn't find any faults in the interview process; (3) the court made an error of fact by calling Thompson's concerns "broad speculative statements" because in her interview Joan indeed repeated statements from Cindy such as "my mom told me that when, that [Mick] got his private part out and looking at the bad stuff and, and momma saw what's on his phone and he told momma that he promise that he never do it again but he lied" and

15

"my mom told me that [Mick] should not do that and he is going to get very in trouble," Dkt. 15-1, at 7, 15; (4) the court unreasonably criticized Thompson for failing to say that "[Joan's] interview statements were *in fact* the product of the phenomena Thompson discussed in his report" because had Thompson done so, that testimony would be excluded as improper commentary on Joan's credibility.

### a. Determination of facts

I'll start with Mick's arguments about the facts as determined by the court of appeals. I take Mick's argument about *Schmidt* to be that the court erred in considering his case to be close enough on the facts to *Schmidt* to adopt the reasoning from *Schmidt* in his case. But courts routinely use other cases to illustrate their reasoning; the court of appeals' invocation of *Schmidt* doesn't mean that it failed to consider the specific facts of Mick's case. And counter to Mick's argument, the court of appeals did not ignore the most notable difference between Mick's case and *Schmidt*—that Thompson was indeed able to evaluate Joan's forensic interview in Mick's case after being unable to do so in *Schmidt*. The court of appeals' discussion of *Schmidt* in Mick's case doesn't convince me that the court rested its decision on an unreasonable determination of the facts.

Mick's other asserted unreasonable applications of fact fare no better. The court of appeals didn't ignore Thompson's critiques of the interview process; it explicitly noted in its detailed recounting of Thompson's report that Thompson was concerned about Joan's "interviews" with Cindy, Joan potentially overhearing negative conversations about Mick, Patty's failure to follow up some of (but not all of) Joan's answers to probe alternative hypotheses, and potential causes for source misattribution errors. Nor did the court unreasonably state that Thompson "offered only broad speculative statements" about his

concerns. Mick states that Joan made specific comments in her forensic interview—apparently parroting things Cindy had told her—that supported Thompson's concerns about improper influence and source misattribution errors. But Mick challenges the court of appeals' discussion of the vagueness of *Thompson's* analysis, not of Joan's underlying statements. Given Thompson's relatively abstract conclusions about how his various reliability factors applied to the facts of this case, it wasn't unreasonable for the court of appeals to characterize Thompson's analysis as broad or speculative. I conclude that the court of appeals didn't base its rejection of Mick's right-to-present-a-defense claim on an unreasonable determination of the facts.

### b. Application of law

That leaves Mick's arguments about the reasonableness of the court of appeals' legal reasoning rejecting his right-to-present-a-defense claim. To establish a violation of his right to present his defense, Mick must demonstrate that "(1) the testimony would have been 'both material and favorable' to his defense," *Harris v. Thompson*, 698 F.3d 609, 626 (7th Cir. 2012) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)), and "(2) the exclusion was 'arbitrary' or 'disproportionate' to the evidentiary purposes advanced by the exclusion," *id.* (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations omitted)). The exclusion of evidence is "material only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id.* at 627 (internal quotation omitted). A garden-variety evidentiary error that leads to the exclusion of evidence is not enough to warrant habeas relief. *Fry v. Pliler*, 551 U.S. 112, 126 (2007) (Breyer, J., concurring in part and dissenting in part).

The seminal case for the right to present a complete defense was *Chambers*. Chambers, charged with the shooting death of a police officer, sought to present evidence that another

individual had repeatedly confessed to the crime, including in a sworn statement to Chambers' counsel, but which he later repudiated. Chambers was not allowed to present that evidence at his trial because of two of Mississippi's evidentiary rules: its voucher rule, which prohibited a party from impeaching his own witness, and its rule against hearsay. *Id*. at 294. The Supreme Court held that, by applying those rules "mechanistically," Mississippi had substantially burdened Chambers' rights to present witnesses in his own defense and confront the witnesses against him, which deprived him of a fair trial. *Id*. at 302.

Mick's case isn't like *Chambers*, in which strict enforcement of state evidentiary rules barred critically relevant evidence. Here, the state court of appeals correctly concluded that Thompson's testimony simply didn't add much to the case trial counsel otherwise presented. Even accepting Mick's argument that the court of appeals incorrectly criticized Thompson's report for failing to state that Joan's interview statements were "*in fact* the product of the phenomena Thompson discussed in his report" because an opinion to that effect would have been excluded under Wisconsin law, the court of appeals still reasonably concluded that Thompson's analysis had limited value because of his relatively abstract conclusions about how his various factors applied to the facts of this case. This was at least in part because Thompson didn't know the contents of any conversations between Joan and Cindy, or between Cindy and other family members, so he wasn't able to opine more specifically about how his factors applied to those conversations or Joan overhearing them. And Thompson's factors tended to focus on "accidental" false memories that a child might misattribute from other conversations; they are less relevant to defense's theory here of outright fabrication and coaching. It's implausible to think that Joan would have adopted a story of graphic sexual abuse by overhearing a conversation. The report's utility to Mick's defense was also tempered by

Thompson's evaluation mostly approving of Detective Patty's interview performance. And the court reasonably recognized that having Thompson testify about the dangers of suggestive interview techniques risked the jury concluding that such techniques had indeed been used without any underlying evidence for that conclusion.

As for the individual statements of Joan's repeating Cindy that Mick says refutes the court's characterization of Thompson's concerns as "broad speculative statements," Mick doesn't explain how those statements—mostly Cindy's statements disapproving of Mick's misconduct—help his defense. Mick notes that Joan did indeed make some comments he describes as "parroting" Cindy's own statements. But that doesn't follow that Joan's direct testimony about the sexual abuse also parroted an earlier comment of Cindy. As the trial court pointed out in excluding Thompson's testimony, Thompson's factors were mostly common-sense concepts about the ways a young child's memory could be affected. In particular, the idea that a young child's account of a story may be influenced by other conversations that the child has had or overheard isn't a concept outside the knowledge of a jury. And even without Thompson's testimony, trial counsel was able to present Mick's defense theory about the impressionability of young children and law enforcement's failure to challenge Cindy's and Joan's accounts.

Mick also argues that the trial court's exclusion of Thompson's expert testimony was arbitrary because it allowed the state's expert testimony by Detective Patty bolstering the reliability of Joan's forensic interview. See *Kubsch v. Neal*, 800 F.3d 783, 798 ("One way a state rule of evidence may be arbitrary is where it restricts the defense but not the prosecution. Several cases in the *Chambers* line have emphasized this 'parity' principle . . . ." (internal quotation omitted)), *vacated on other grounds after rehearing en banc granted*, 838 F.3d 845 (7th

Cir. 2016). Mick doesn't meaningfully develop this argument, which would be reason enough to reject it. In any event, the facts here do not support a "parity" argument. This wasn't a case in which particular evidence was admissible for the state but not for the defendant. The trial court simply made separate assessments about the admissibility of two experts, applying standard evidentiary principles. This is the type of "garden-variety" evidentiary ruling that does not deprive a defendant of his constitutional right to present a defense. *Holmes*, 547 U.S. at 330 (right to present a defense is not violated by evidentiary rules that "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues").

Therefore, I conclude that the Wisconsin Court of Appeals did not unreasonably apply Supreme Court principles in rejecting Mick's right-to-present-a-defense argument. So Mick is not entitled to habeas relief on this ground.

## B.  Ineffective assistance of counsel

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). The state court of appeals properly identified *Strickland's* two-part test for reviewing these claims. *Mick II*, 2022 WL 2176271, ¶ 21. To establish that counsel provided ineffective assistance, Mick must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. To prove deficient performance, Mick must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, Mick must show "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Because the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* The question is not whether counsel's actions were reasonable, but rather, "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 1. Procedural default

The state contends that all of Mick's ineffective assistance of counsel claims are procedurally defaulted. A claim is procedurally defaulted, and thus barred from federal review, if "the last state court that rendered judgment 'clearly and expressly states that its judgment rests on a state procedural bar.'" *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)) (additional internal quotation omitted). To bar federal habeas review, the state procedural ground must be "'independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state law ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Id.* (internal quotation omitted). "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.* (internal quotation omitted).

Mick litigated his ineffective assistance of counsel claims in two different filings: his original pro se Wis. Stat. § 974.06 motion and his later counseled "supplemental" § 974.06 motion.

### a.  Mick's pro se § 974.06 motion

The state contends that the state court of appeals held that the ineffective-assistance claims raised in Mick's pro se motion were barred under *State v. Allen*, 2004 WI 106, ¶ 12, 274 Wis. 2d 568, 682 N.W.2d 433, which allows a state circuit court to deny a postconviction motion without a hearing if the facts alleged in the motion do not entitle the movant to relief, if key factual allegations in the motion are conclusory, or if the record conclusively demonstrates that the movant is not entitled to relief. "*Allen*'s pleading standard is an adequate and independent state procedural rule." *Whyte v. Winkleski*, 34 F.4th 617, 625 (7th Cir. 2022). But the *Allen* rule applies as a procedural bar only when state courts have deemed the allegations in petitioners' pleadings too conclusory to satisfy *Strickland*. *See Stinson v. Fuchs*, No. 20-cv-1101-jdp, 2023 WL 172481, at *3 (W.D. Wis. Jan. 12, 2023).

The state court of appeals did not rely on this part of *Allen* to rule on the *Strickland* claims in Mick's pro se motion. Instead, the court assumed without deciding that postconviction/appellate counsel's erroneous advice that Mick couldn't file both a postconviction motion and a direct appeal was a sufficient reason for not earlier raising his ineffective assistance of counsel claims. The court stated, "It follows that the issues raised in [Mick's] pro se motion are not procedurally barred, and we address them on the merits in this following section of this opinion." *Mick II*, 2022 WL 2176271, ¶ 18. I conclude that Mick's ineffective assistance of trial counsel claims raised in his pro se § 974.06 motion are not procedurally barred.

### b.  Mick's counseled supplemental § 974.06 motion

The state also contends that any argument Mick made in his counseled supplement to his § 974.06 motion is procedurally barred. The only issue from the supplemental motion that

22

appears in his habeas petition is a portion of his claim about trial counsel failing to properly impeach Cindy. Mick alleged in the supplemental motion that counsel didn't review an audio recording of Cindy telling police that Joan hadn't received counseling, arguing that counsel should have used the recording to impeach Cindy's inconsistent statement that Joan was "admitting lots of stuff" in counseling.

The state court of appeals concluded that the supplemental motion's arguments were barred by *State v. Escalona-Naranjo,* 185 Wis. 2d 168, 517 N.W.2d 157 (1994) (petitioner procedurally barred from raising claim in postconviction motion that could have been raised in a § 974.02 postconviction motion or appeal, unless defendant provides "sufficient reason" for not raising the issues in that earlier proceeding); *see also State v. Lo,* 2003 WI 107, ¶ 44, 264 Wis. 2d 1, 665 N.W.2d 756 ("all claims of error that a criminal defendant can bring should be consolidated into one motion or appeal, and claims that could have been raised on direct appeal or in a previous § 974.06 motion are barred from being raised in a subsequent § 974.06 postconviction motion absent a showing of a sufficient reason for why the claims were not raised on direct appeal or in a previous § 974.06 motion." (citing *Escalona-Naranjo*)). The court reasoned that Mick didn't give a good reason for failing to raise those arguments in his earlier pro se § 974.06 motion. *Mick II,* 2022 WL 2176271, ¶ 19. The court took Mick to argue that "he did not raise these issues in his pro se motion because he is not a trained lawyer and 'lacked knowledge regarding the factual or legal basis for some of the claims.'" *Id.* ¶ 20. The court concluded, "To the extent that Mick is relying on an asserted lack of knowledge of 'the factual or legal basis' for 'some' of the new claims, this assertion is conclusory and undeveloped" and that his pro se status alone wasn't a sufficient reason for failing to raise a claim earlier. *Id.*

(citing *Allen*, 2004 WI 106, ¶ 9). Ordinarily, this would mean that these arguments are procedurally defaulted in this court as well.

Mick contends that the state court of appeals erred in concluding that his reasons for not raising his arguments in his original pro se motion were conclusory and undeveloped. Mick argues that his trial and appellate court filings properly explained the basis for him raising new arguments for the first time in his supplemental motion. In particular, regarding his ineffective-assistance claim about the audio recording of Cindy telling police that Joan hadn't received counseling, Mick argues that the court of appeals' ruling was not an "adequate" application of *Allen's* pleading standard because the court of appeals ruling was "based on a completely unreasonable finding of fact" that Mick sought another chance to bring that claim merely because of his status as a pro se litigant. Instead, he explicitly argued in the state court of appeals that he deserved another chance to raise that claim because he was previously unaware of the existence of the audio recording. Dkt. 19, at 34. This doubles as his argument to overcome procedural default by "establish[ing] cause for and prejudice from the default." *Whyte,* F.4th at 624.

I disagree with Mick's argument that the court of appeals misconstrued his briefing, so I won't disregard the court's application of *Escalona-Naranjo* and *Allen*. By referring to Mick's pro se status, the court apparently took Mick to argue that he was unaware of the audio recording when he filed his pro se § 974.06 motion and that he needed counsel to discover that evidence. In any event, the court didn't rely solely on Mick's pro se status: it explicitly stated that Mick's asserted lack of knowledge was "conclusory and undeveloped." I agree that Mick's counseled supplemental § 974.06 motion contained very little explanation for Mick's inability to discover the audio recording or legal authority supporting an exception from *Escalona-*

*Naranjo*. The court of appeals adequately applied state case law in concluding that Mick's claims were defaulted.

The same reasoning precludes Mick from showing cause for and prejudice from the default. "Cause requires a showing of some type of external impediment that prevented [the petitioner] from presenting his claims." *Garcia v. Cromwell*, 28 F.4th 764, 775 (7th Cir. 2022) (internal quotation omitted). As the state points out, Mick had no right to counsel in his post-appeal § 974.06 proceedings and no pressing deadline to file his original pro se motion (§ 974.06(2) states that a motion "may be made at any time"). So Mick's ignorance of the audio recording because of ineffective assistance of previous counsel isn't sufficient cause to give him a second chance at a § 974.06 motion. *Cf. Garcia*, 28 F.4th at 775 ("But errors by counsel in the first round of postconviction proceedings cannot serve as cause to excuse Garcia's *own* default in the second."). Moreover, Mick doesn't show cause for his counsel's failure to meet the *Allen* pleading standard in his supplemental motion.

Another exception to procedural default "applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Wilson v. Cromwell*, 69 F.4th 410, 421 (7th Cir. 2023) (internal quotations omitted). To establish an actual innocence claim, Mick "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To qualify for this narrow exception, Mick must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. But Mick doesn't make an actual innocence argument, nor is the audio recording here the type of striking

new evidence contemplated in *Schlup* that would be necessary to show that Mick was actually innocent of the offense.

To summarize, Mick's ineffective-assistance claims raised in his pro se § 974.06 motion are not procedurally barred, but the portions of his claims related to counsel's failure to properly review or use an audio recording of Cindy are procedurally barred.

**2. Trial counsel's failure to object to Detective Patty's testimony on Joan's credibility**

I turn to the substance of Mick's *Strickland* claims. Mick contends that trial counsel was ineffective by failing to object to or move to strike non-responsive testimony given by Joan's forensic interviewer, Detective Patty, on cross-examination. Mick says that these statements vouched for Joan's credibility, in violation of *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984) ("No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth.").

The testimony at issue is Patty's responses to Mick's trial counsel asking her about the concepts of credibility and reliability:

> Q. Now, in your training and experience, are you familiar with the difference between credibility and reliability?
>
> [Objection overruled]
>
> WITNESS PATTY: I've heard both of those terms, yes.
>
> Q. In your training and experience you've not—are you able to describe the difference between the two from your training and experience in this field?
>
> [Objection overruled]
>
> WITNESS PATTY: I use the term credible when, if—in this case, when this child was providing her statement, she was providing her information in a free, narrative form. When asked to tell me about that and then what happened, she was able to give a free

flowing description of what happened. There were no questions to her of, Your dad did this, didn't he, or things like that that she was then prompted to answer yes or no to in that kind of context. To me, her testimony or her interview, the information she provided, I view that as credible.

In regards to reliable, I use the word reliable frequently in search warrants, subpoenas when I am citing information that's been provided to me in an investigation and I'm trying to obtain through legal means documents, or search a home, or any other item that I might be trying to obtain evidence from, and I am relying on information that's been provided to me as part of the information.

Q. Would you say that credibility means that the person making that statement believes it is true?

[Objection overruled]

WITNESS PATTY: In general, I would agree with that.

Q. And then reliably, something being reliable means that it's actually true?

[Objection overruled]

WITNESS PATTY: To me, credible and reliable are nearly interchangeable, in my opinion.

Q. Nearly?

A. I would use them -- I would use them fairly interchangeably.

Dkt. 6-2, at 356–58.

Mick doesn't challenge counsel's effectiveness in eliciting this testimony; the court of appeals characterized this line of questioning as trial counsel's "attempt[] to show that the purpose of the forensic interview was to collect information from Joan, not to test the veracity of her statement." *Mick II*, 2022 WL 2176271, ¶ 47. It noted that counsel's performance in asking those questions wasn't deficient just because he "may not have gotten all of the answers

he hoped for," but it assumed without deciding that counsel's failure to object or move to strike Patty's answers was deficient. *Id.*

Despite its assumption that counsel's failure to object was deficient, the court concluded that Mick was not prejudiced by that failure. *Id.*, ¶ 48. The court noted that counsel argued at closing that the truth of Joan's statements was uncertain because Patty assumed that Cindy's report was true and didn't probe into whether Joan was coached. The court concluded that it did "not see any reasonable probability that the jury would have credited this defense theory had the court stricken the testimony in question." *Id.* Mick argues that this reasoning "improperly inverts the reasonable probability analysis," because the question under *Strickland* isn't whether there was a reasonable probability that the jury would have credited a particular defense theory, but rather where there is a reasonable probability that the jury would have come to a different verdict without the error. Dkt. 19, at 30.

I am not inclined to conclude that the court of appeals' analysis unreasonably applied *Strickland*. I take the court to have meant that Patty's responses were helpful to Mick's theory at trial that law enforcement believed in Mick's guilt and didn't challenge Joan's testimony, and thus counsel successfully striking that testimony wouldn't have changed the outcome.

But even if the state court of appeals did misapply *Strickland*, Mick would not automatically be entitled to habeas relief; instead, de novo review would apply to the prejudice prong of his *Strickland* claim. *See, e.g.*, *Thomas v. Clements*, 789 F.3d 760, 768 (7th Cir. 2015) (if state court's adjudication of a claim was unreasonable under § 2254(d)(1), federal habeas review of that claim is de novo). Even if I reviewed this issue de novo, Mick has not shown that counsel's failure to object to and move to strike Patty's statements was prejudicial.

Mick argues that Patty's statements were crucial because "[t]his was a credibility case, dependently entirely upon the credibility of Joan's forensic interview accusations, and the error involved an expert witness vouching for the credibility of those accusations." Dkt. 19, at 30. I agree that the trial was largely a credibility contest, but the lack of direct corroborating evidence doesn't mean that the state's case was weak. Joan's testimony was powerful, providing graphic accounts of pornography, masturbation, and sexual abuse, including the characteristics of semen, that a 6-year-old wouldn't be expected to provide on her own, or to have learned by simply overhearing a conversation. The state pointed out inconsistencies in Mick's accounts of events in court and to police. And state argued the implausibility that Joan was coached into a fabricated account of sexual abuse by Cindy.

It's also unlikely that the jury's takeaway from the exchange was that Patty clearly endorsed Joan's testimony as truthful. Her remarks were made as part of an awkward attempt by counsel to distinguish "credibility" and "reliability." Patty's initial answer was that "credible" had to do with the flow of Joan's testimony ("providing her information in a free, narrative form"), as contrasted with her initial definition of "reliable" having more to do with the accuracy of the information. She then agreed with the notion that "credible" means that the person saying something *believes* that it's true, before blending the concepts of credibility and reliability together. Additionally, this exchange came shortly after Patty testified that child interviews would be scheduled at all only if there was "credible information that a child has been put at risk," Dkt. 6-2, at 310, giving the jury another different use of the term. It's far more likely that the jury was left confused by the whole exchange and Patty's shifting explanations.

Besides being part of a confusing exchange, the negative impact of Patty's remarks was minimal; it was not referred to in later testimony or argument to bolster the state's case. An objection or request to strike from Mick's trial counsel could have led the jury to focus on the remarks more. And, as the state court of appeals noted, trial counsel gave the jury reasons to doubt Patty's statements; her remarks to some degree played into Mick's defense theory that law enforcement thought the abuse had happened and focused more on building a case against Mick than pushing to get at the truth of what actually happened, and that Patty avoided challenging Joan in spots where she could have probed into the idea that Cindy had coached her.

For all these reasons, I conclude that Mick hasn't shown a reasonable probability that the jury would have come to a different verdict without this error. I will not grant Mick's habeas petition on this ground.

### 3.  Trial counsel's failure to impeach Cindy with additional text messages

Mick contends that trial counsel was ineffective by failing to impeach Cindy with additional text messages between her and Mick exchanged on November 18, 2015 (the day before Cindy shared Joan's allegations with police). Mick says that the texts bolstered his theory that Cindy manipulated Joan into fabricating her allegations against Mick. Those texts included:

- Trust me. With a porn addiction, jerking off with [Joan] on the same couch, your control issues, your felony and anger issues and working with [G]race and my detective, you won't win. At all

- Cause I whack off INFRONT of my 6 year old? Okay

- BTW. [Joan] is in counseling. She's admitting lots of stuff. The therapist will use it in court. The detective will also be in court as well as my attorney.

- [Our son]'s best with me where he is safe from a potential pedophile and a felon.

- Well no, a legit pedophile..just not legally named one.

- I've been in counseling and so has [Joan].

Dkt. 15-11, at 7–10.

Mick argues that trial counsel lacked a strategic purpose to fail to cross-examine Cindy about these messages given counsel's defense theory that Cindy manipulated Joan into making false allegations. Mick states that the messages would have established Cindy's motive to lie regarding the child custody case, and contradicted her trial testimony denying that she made threats about a child custody case or claimed to be gathering evidence against Mick.

Both Mick and the state court of appeals focused on the message stating that Joan was in counseling and "admitting lots of stuff" that could be used against Mick in court. The court of appeals concluded that counsel

> could have had an objectively reasonable strategic reason for not addressing this topic in cross-examination. It is apparent that counsel's strategy was to persuade the jury that Cindy made up the allegation on November 19, in response to learning about the harassment injunction. Any assertion that Joan said something to a therapist before November 19 that could be used against Mick in court might have undermined that strategy.

*Mick II*, 2022 WL 2176271, ¶ 38.

Mick notes that the trial court didn't hold a *Machner* hearing giving trial counsel a chance to explain the reasoning for his various decisions, and he argues that the court of appeals "may not invent strategic explanations on counsel's behalf." Dkt. 19, at 32 (citing *Harris v. Reed*, 894 F.2d 871, 787 (7th Cir. 1990) ("Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer")). But subsequent decisions have made clear that because the *Strickland* standard is an objective one, it is not improper for courts to

hypothesize a lawyer's strategic rationale when one is apparent from the record. *Richter*, 562 U.S. at 109 ("Although courts may not indulge *post hoc* rationalization for counsel's decisionmaking that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions." (citation and internal quotation omitted)); *Meyers v. Gomez*, 50 F.4th 628, 645 (7th Cir. 2022) ("For us to presuppose, when counsel is unavailable to explain his decision-making, that he had no strategic rationale for the particular choice at issue—when a choice clearly was made—would turn [*Strickland's* presumptions of defense counsel's effectiveness] on their head.").

The record supports the state court of appeals' assessment of counsel's performance. Impeaching Cindy with the messages could have undermined the defense theory that Cindy fabricated the allegations that Joan told her about Mick's abuse after Cindy learned about the restraining order. In his opening statement, counsel stated that "[t]he timing of this is crucial, that when they call [Cindy] about her harassing behavior, [Mick] is now accused for the first time ever of child molestation, of sexually assaulting her" and that the jury should "listen to where these stories sprang from. They also started with [Cindy] in the middle of a divorce." Dkt. 6-1, at 166, 168. Counsel impeached Cindy's credibility by eliciting testimony from her about the timing of her first reporting the assaults that contradicted a police officer's testimony and contemporaneous report stating that Cindy reported an assault during their first phone call, directly after learning of Mick's push for a restraining order. And in his closing argument, counsel emphasized that discrepancy and the suspicious timing of Cindy making this accusation right after learning that Mick sought a restraining order in the middle of a contentious child custody dispute. Evidence that Joan was earlier making accusations of sexual

32

abuse in counseling wouldn't fit that theory. The court of appeals' ruling that counsel's performance met *Strickland*'s deferential standard was reasonable.

The state court of appeals also reasonably applied *Strickland* in finding no prejudice from this decision. As the court stated, counsel "vigorously" cross-examined Cindy, *Mick II*, 2022 WL 2176271, ¶ 29, damaging her credibility by revealing that she had broken into Mick's email and other online accounts and threatened to get "filthy" in the child custody dispute, and by catching her in a falsehood about the timing of her first reporting sexual abuse of Joan. Yet the jury still ultimately believed Joan's account. Mick's argument that further cross-examination about additional texts would have tipped the scales is unpersuasive. The court of appeals reasonably concluded that "it is far more likely that the jury may have believed that Cindy had a motive to hurt Mick and had not been honest about the timing and circumstances of Joan's disclosure, but that the jury also believed that Joan's underlying statements about Mick's conduct were true." *Id.*, ¶ 39.

Mick makes a related argument that trial counsel was ineffective by failing to introduce a copy of Mick and Cindy's heated text exchange as an exhibit, leaving "the jury with the false impression that Cindy's denials were trustworthy." Dkt. 19, at 32. But the state court of appeals reasonably concluded that even if the complete exchange were allowed into evidence by the trial court, it "contained unfiltered and salacious allegations about Mick and demeaning language and insults from Mick that could have been very damaging in the eyes of the jury," *Mick II*, 2022 WL 2176271, ¶ 40. It was reasonable for counsel to confront Cindy with specific texts on cross-examination instead. And in any event, it's implausible that the jury believed Cindy's attempts at avoiding responsibility for the texts: the trial court noted in denying Mick's supplemental § 974.06 motion that "[Cindy's] demeanor at trial indicated that she had said

33

something along those lines. As I indicated, her head went down and her voice quieted." Dkt. 6-6, at 41. The court of appeals reasonably concluded that there was no prejudice in counsel failing to introduce the text exchange as an exhibit.

Mick also attempts to bolster this ground for relief with the argument that trial counsel failed to completely review discovery, which would have revealed the audio recording proving that Cindy was lying about Joan having previously received counseling. But I've already concluded that this line of argument is procedurally defaulted. Mick isn't entitled to habeas relief on this ground.

### 4. Postconviction/appellate counsel

Mick contends that his original postconviction/appellate counsel was ineffective by failing to raise Mick's ineffective assistance of trial counsel claims, failing to review the audio recording of Cindy admitting that Joan hadn't received counseling, and by advising Mick that he couldn't pursue both a postconviction motion and an appeal. The state court of appeals assumed without deciding that the issues that Mick raised in his pro se § 974.06 motion weren't procedurally barred because of postconviction/appellate counsel's advice that Mick couldn't pursue both a postconviction motion and an appeal.

It's clear that it would be deficient performance to erroneously tell a client that he had to choose between a postconviction motion and an appeal. But Mick's asserted prejudice from this deficiency is the failure to earlier raise his ineffective assistance of trial counsel claims that the state court of appeals ultimately rejected in *Mick II* and that I conclude are not the basis for habeas relief. So postconviction/appellate counsel's ineffectiveness isn't the basis for habeas relief either. And any claim of postconviction/appellate counsel's ineffectiveness regarding issues raised in Mick's supplemental petition are procedurally barred.

### 5. Aggregate error

Mick also makes an "aggregate error" argument under *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000) ("Trial errors which in isolation are harmless might, when aggregated, alter the course of a trial so as to violate a petitioner's right to due process of law."). The state court of appeals rejected a similar argument, stating that "there is nothing to cumulate in this case" because trial counsel's failure to object to Detective Patty's testimony on Joan's credibility was the only potential deficiency. *Mick II*, 2022 WL 2176271, ¶ 48 n.18. Because I also conclude that counsel's failure to object to Patty's testimony was the only error regarding the issues raised in Mick's habeas petition, there is no aggregate error. *Alvarez*, 225 F.3d at 825 ("[I]f there was no error, or just a single error, there are no ill effects to accumulate.").

Because none of Mick's claims succeed, I will deny his petition for habeas relief.

## C. Certificate of appealability

The remaining question is whether to grant Mick a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Although I am not persuaded by Mick's arguments, I will grant him a certificate of appealability.

ORDER

IT IS ORDERED that:

1.  Petitioner's Daniel Mick's petition for a writ of habeas corpus under 28 U.S.C.
    § 2254, Dkt. 1, is DENIED.

2.  Petitioner is GRANTED a certificate of appealability.

3.  The clerk of court is directed to enter judgment and close the case.

Entered July 22, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge